THE STATE OF MISSOURI to the use of ORLANDO C.
BURTON, Respondent, v. EMILY F. DENNIS
*et al.*, Appellants.

### St. Louis Court of Appeals, May 22, 1894.

Curator: LIABILITY OF SURETIES ON NEW BOND. A curator gave a new
bond in the course of his curatorship. He was at the time indebted
to his ward for a balance due on prior settlements, and did nothing
subsequently besides carrying forward the amount thereof in the
settlements afterwards made by him. It did not appear either that
he was insolvent at the time of the execution of the new bond, or
that he had prior thereto embezzled or converted any of the balance
thus due. *Held*, that the sureties on the new bond were chargeable
for his failure to pay over such balance.

*Appeal from the Scott Circuit Court.*—HON. H. C. RILEY,
Judge.

AFFIRMED.

*J. J. Russell* and *Albert De Reign* for appellants.

*Wilson Cramer* for respondent.

BOND, J.—This cause of action is founded upon a
curator's bond, executed by the father of the plaintiff,
Larkin Burton, as principal, and Lafayette Ringo and
G. L. Anderson, as securities. The bond is for the
sum of $1,700, and was made April 13, 1887. About

The State to use v. Dennis.

eleven years prior to the execution of this bond. Larkin Burton, the principal therein, was appointed curator of the plaintiff. Two of the obligors in said bond, Larkin Burton and Lafayette Ringo, are dead. Anderson, the remaining obligor, is insolvent, and this action is brought against the heirs of Lafayette Ringo to charge certain lands descended to them for the alleged breach of the bond in suit.

Defendants answered, admitting settlement made by Larkin Burton in his lifetime as guardian of plaintiff, whereby it appeared that he was indebted to his ward in a large sum of money, but defendants averred "that said moneys and assets of said ward were lost, converted and embezzled, by said guardian long before the said bond sued on was executed; that said guardian paid all sums of money which came into his hands as such after the execution of said bond, and by his last will directed the proceeds of certain life insurance to be paid said ward; and that $666.65 was paid as thus directed.

The record shows that Larkin Burton, guardian of the plaintiff, made a settlement as such on May 14, 1880, wherein he charged himself, to wit:

"To amount in his hands on former settlement.................$533 78
"Interest received ..........................................  53 37

                                                                587 15

CREDITS.

"61.  Clerk's fees......................................$  1 50
"62.  Att's fees........................................   2 00
"63.  Printer's fees....................................     20

                                                      $   3 70
                                                      $583 45

                                                        587 15

The evidence further shows that he made subsequent settlements on February 14, 1881; November

10, 1881; August 16, 1882; August 14, 1883; August 12, 1884; November 16, 1885; November 10, 1886; in which last settlement he charged himself with a balance due his ward of $866.02; that on April 13, 1887, following this settlement, the bond in suit, was executed in the ordinary form under a penalty of $1,700; that the curator thereafter continued his settlements as guardian, charging himself on each with the amount due on the last preceding settlement; that on the last settlement of said curator, made May 12, 1891, the balance found to be due his ward was $1,790.89.

The will of the deceased guardian, dated December 1, 1886, and admitted to probate on the twenty-fifth day of February, 1892, contained the following clause: "I owe my son O. C. Burton the sum of $300, and I direct that this amount shall be paid to him by my executor, hereinafter named, out of the amount of my policy in the A. O. U. W. Lodge of Commerce, Missouri."

The policy referred to in said will was paid by the parent corporation direct to three beneficiaries, one of them being the plaintiff, each of whom received $666.65. The executor of said will did not receive nor disburse any of the proceeds of said policy.

There was no evidence of the insolvency of the curator at the time of the execution of the bond in suit. There was some evidence tending to show that he was a borrower of money upon mortgages. There was also evidence tending to prove the allegations of the petition as to the heirship of defendants and their ownership of the land described in the petition, and that no part of the sum, adjudged to be due plaintiff on the final settlement of his guardian, *supra*, had been paid to him.

The case was tried by the court, a jury being waived, and judgment rendered in favor of plaintiff for the sum of $1,460.50.

All the declarations of law requested by defendants were given. The errors assigned on this appeal are "that the verdict was unsupported by the evidence and is opposed to the declarations of law given by the court. That the condition of the bond in suit is prospective, and that defendants can not be held for the prior defaults of their principal, is said to be "too clear to admit of discussion or require any citation of authority." *Tittman v. Green*, 108 Mo. 33.

The principle applied to the facts of that case is determinative of the one at bar. In that case the question was fully considered as to how far the sureties on the bond of a trustee could be held for money due a ward by her guardian previous to his appointment as trustee, which he carried in his private accounts, when de did nothing more than receipt for to himself as trustee, he being solvent. It was held that the sureties on the trustee's bond were liable for his subsequent failure as trustee to pay over the money; that the facts in judgment did not show a mere transfer of indebtedness, whereby the sureties of a fiduciary in one capacity were exonerated and the burden thrown upon his sureties in a succeeding character.

In the discussion of that case great stress is put on the fact, that sureties of the trustee entered into a bond for double the amount shown to be in his hands by his settlement as curator; that by intendment they were before the court, and were effected with knowledge of the source of the fund in the hands of their principal and became "sponsors for his good conduct." In the case at bar the settlement of the curator had, before the giving of the bond in suit, disclosed that there was in his hands a large sum of money due his ward. The ancestor of defendants became a party to a bond for double the amount thus shown to be in the hands of his principal. The subsequent settlements of the

guardian, after the giving of the bond, were unequivocal statements of his liability as such.

It nowhere appears that he was insolvent, when the bond sued on was given. The amount of the money in his hands at that time was a matter of record constructively within the knowledge of his sureties. That it was *actually* within their knowledge is an inference from the amount (double) of the penalty of the bond signed by them.

The burden of proof to establish that the guardian had embezzled or converted the money of his ward prior to the execution of the bond (as averred in their answer) was upon the defendants. And if it be conceded that there was some evidence adduced tending to establish this allegation, we can not say that it was conclusive, since the record also affords the basis of a legitimate inference to the contrary, and it is not our province to review the finding of the trier of the fact on the issue presented by this conflicting evidence.

That the trial judge tried the case upon a correct theory, so far as the defense made by the answer is concerned, is apparent from the declarations of law given by him as to the sufficiency of this defense.

Finding no reversible error in this case, the judgment herein is affirmed. Judge ROMBAUER concurs. Judge BIGGS is absent.